STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas C. SMITH, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 92–2839–CR, 92–2840–CR. Oral argument October 13, 1994.—Decided January 13, 1995.*

(Also reported in 525 N.W.2d 264.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

DAY, J. This is a review of an unpublished decision of the court of appeals affirming a judgment of the circuit court for Rock County, Honorable J. Richard Long, Judge, that convicted Mr. Thomas C. Smith of conspiracy to deliver a controlled substance, cocaine, and denied postconviction relief. This case presents a single issue: whether under the agreed facts of this case an agreement between a buyer and a seller (the defendant) for a delivery of a small amount of a controlled substance for personal use by the buyer constituted a conspiracy to deliver a controlled substance under sec. 161.41(1x) Stats.[1] This Court holds that a conviction for conspiracy to deliver a controlled substance cannot be upheld where the only evidence presented by the State was that the seller purported to have in his possession and agreed to sell a small amount of the controlled substance consistent with personal use to the buyer and where there was not even

---

[1] Section 161.41(1x), Stats. (1991–92), reads:

**161.41 Prohibited acts A—penalties. . . . (1x)** Any person who conspires, as specified in s. 939.31, to commit a crime under sub. (1)(c) . . . is subject to the applicable penalties under sub. (1)(c) . . ..

Section 939.31, Stats. (1991–92), reads in pertinent part:

**939.31 Conspiracy.** Except as provided in ss. 161.41(1x), . . . whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both not to exceed the maximum provided for the completed crime; . . .

Section 161.41(1)(c), Stats. (1991–92), reads in pertinent part:

**161.41 Prohibited acts A—penalties. (1)** Except as authorized by this chapter, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to: . . . (c) A controlled substance under s. 161.16(2)(b) [cocaine] is subject to the following penalties: . . ..

a claim that the buyer intended to sell, deliver or give the controlled substance to a third party. We therefore reverse the decision of the court of appeals and remand the case for further proceedings not inconsistent with this opinion.

The facts of this case are not in dispute. On October 21, 1991, Mr. Smith entered a plea of guilty to second degree sexual assault and conspiracy to deliver a controlled substance. Smith entered this plea as part of a plea agreement in which the State agreed to dismiss charges of delivery of a "noncontrolled substance,"[2] bail jumping, and habitual criminality.

At Smith's plea hearing, the prosecutor stated that he was prepared to prove the following facts:

> Officer Dransfield . . . would have testified that on April 29, 1991, at around 11:45 p.m., he was dispatched to R.C.'s Pub, located at 1449 Bayliss, in Beloit . . . where he spoke with Bartender [Geri G.] who stated that a man identified as Thomas Charles Smith had asked her to hold on to one-sixteenth ounce of cocaine until a guy could pick it up. She stated that she wouldn't do that . . . . Dransfield reported that [Geri G.] also stated that Smith had attempted to sell cocaine to her. She stated that thereafter he had stated that if she wanted to buy some drugs from him, she should give him a $20 bill and he would give her a thirty bag. She stated that she told him that all she had was $9, at which time he did give her a piece of paper and said there was

---

[2] Section 161.41(4)(a), Stats. (1991–92), provides in part:

**161.41 Prohibited acts A—penalties. . . . (4)** (a)  No person may knowingly deliver, attempt to deliver, or cause to be delivered a noncontrolled substance and expressly or impliedly represent to the recipient:
  1.   The substance is a controlled substance;

enough in there for five lines. . . . Officer Schaefer of the Beloit Township Police reports that on April 30, 1991 he did speak with [Geri G.] who stated that Charles Smith had again come to R.C.'s Pub in Beloit Township, Rock County, Wisconsin, and asked to speak with her and that she did go outside of that business where-upon Smith told her that he had given her the wrong piece of paper the night before and that he could give her the stuff now. Schaefer reports that [Geri G.] did state that Smith told her he wanted $20 from her now and he would give her a quarter of cocaine. [Geri G.] stated that Smith further said that he would send a female child that was in the car in which he had arrived into the bar with a small white ball and that the cocaine would be in the ball. She stated that she told Smith that she didn't want the female child coming into the bar and that she would come out and get it. She stated that shortly thereafter she did call the police. Schaefer reports he was given consent by Thomas Charles Smith to search Smith's vehicle and he did find a small white baseball in the front seat.

There is nothing in the record showing that Officer Schaefer found any cocaine in Smith's vehicle.

Smith pled guilty to the crime of conspiracy to deliver cocaine for which he received a prison term of five years consecutive to a ten year term he received for a guilty plea to second degree sexual assault. Smith later filed a postconviction motion to withdraw his guilty plea to the conspiracy count on the ground that there was no factual basis for the conspiracy conviction. The trial court denied the postconviction motion, and Smith appealed. The court of appeals affirmed the circuit court in a two to one decision. Smith petitioned this Court for review which was granted.

500

Whether the buy-sell agreement between Smith and Geri G. constituted a conspiracy under sec. 161.41(1x), Stats., is a question of law which this Court reviews de novo. *Ball v. District No. 4 Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). If the agreement does not constitute a conspiracy, there is no factual basis in the record to support Smith's guilty plea to the charge of conspiracy to deliver a controlled substance, and he has a right to withdraw that plea. *Morones v. State,* 61 Wis. 2d 544, 552, 213 N.W.2d 31 (1973).

The purpose of statutory interpretation is to ascertain and give effect to the legislative intent behind the statute. *In the Interest of P.A.K,* 119 Wis. 2d 871, 878, 350 N.W.2d 677 (1984). We conclude the legislature did not intend a buyer-seller relationship for a small amount of a cocaine for the buyer's personal use to be a conspiracy and thus make the buyer guilty of a felony. A conspiracy must involve at least two people, with each member subject to the same penalty for the conspiracy. The two parties involved here are the buyer and seller. When the case is examined from the point of the buyer instead of the seller, it becomes obvious that the State's interpretation does not give effect to the legislative intent behind the Wisconsin Uniform Controlled Substances Act, ch. 161, Stats.

Here, there was no claim or proof that the buyer intended to further deliver the cocaine which would be a felony.[3] As such, the most the buyer could have been

---

[3] "Evidence of the quantity and monetary value of the substances possessed" can be used to demonstrate intent to deliver. Section 161.41(1m), Stats. (1991–92). If this intent is shown, the possessor is guilty of a felony. *Id.*

guilty of was the misdemeanor of possession. *See* sec. 161.41(3m), Stats. (1991–92).[4] We conclude the legislature did not intend that the State could, by adding a conspiracy charge to the possession charge, create a felony charge against the buyer who buys an amount of cocaine consistent with personal use where there is not even a claim by the State that the buyer intended to further deliver the cocaine to a third party.

"Wisconsin's controlled substance act, ch. 161, is based upon the Uniform Controlled Substances Act (1990) (U.L.A.), which in turn was based upon the federal Controlled Substances Act, 21 U.S.C. sec. 801 et seq. (1988)." *State v. Clemons,* 164 Wis. 2d 506, 512 n.4, 476 N.W.2d 283 (Ct. App. 1991). In interpreting the federal Controlled Substances Act, this Court stated:

> Congress undoubtedly intended by this new Act to make an all-out attempt to combat illicit drugs by subjecting any individual who knowingly participates in the distribution to substantial, and in some cases severe, penalties while dealing less severely with, and attempting to aid, the unfortunate individuals who are the ultimate users of the illicit drugs.

*State v. Hecht,* 116 Wis. 2d 605, 613, 342 N.W.2d 721 (1984) *(quoting United States v. Pruitt,* 487 F.2d 1241, 1245 (8th Cir. 1973)). If the State's interpretation were accepted, those "unfortunate individuals who are the

---

[4] Section 161.41(3m), Stats. (1991–92), provides:

**161.41 Prohibited acts A—penalties. . . . (3m)** It is unlawful for any person to possess or attempt to possess a controlled substance included under s. 161.14(7)(a) or 161.16(2)(b) [cocaine] . . .. Any person who violates this subsection shall be fined not less than $250 nor more than $5,000 and may be imprisoned for not more than one year in the county jail.

ultimate users of the illicit drugs" could be punished as severely as the distributors. *Id.*

The State argues that the crime of delivery does not require an agreement between two parties, and so the sale agreement constitutes an agreement beyond what is needed to commit the crime of delivery and can be the basis for a conspiracy conviction. However, the State cites only one case that states that no agreement is required for a distribution to occur, *People v. Betancourt*, 327 N.W.2d 390, 392–93 (Mich. Ct. App. 1982). The language from that case suggesting that distribution can occur without an agreement is *obiter dictum*, as the case involved agreements to distribute controlled substances among at least three actors. *Id.* The State also cites *People v. Bloom*, 577 P.2d 288, 291 (Colo. 1978), for support of their one actor theory. The agreement in that case again involved more than two people. *Id.* Moreover, the underlying Colorado statute there included the offering of a controlled substance as evidence of the offense. *Id.* Obviously, one person is all that is required to make an offer. The Wisconsin statute requires two people for a delivery. A delivery is a "transfer *from one person to another.*" Section 161.01(6), Stats. (emphasis added).[5]

We agree with the statement in the case of *U.S. v. Moran*, 984 F.2d 1299 (1st Cir. 1993), in which the court said:

> As for the classic single sale—for personal use, without prearrangement, and with nothing

---

[5] Section 161.01(6), Stats. (1991–92), provides in part:

**Definitions.** As used in this chapter: . . . (6) 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is any agency relationship. . . .

more—the precedent in this circuit as well as others treats it as not involving conspiracy.

*Id.* at 1304.

In conclusion, here the evidence only shows that Smith offered to deliver cocaine to Geri G. for her personal use. No other facts are in the record that would sustain a theory of conspiracy. Therefore, there is no factual basis which can support Smith's guilty plea, and he must be allowed to withdraw that plea.[6] The judgment of the court of appeals is reversed.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

---

[6] The court of appeals stated that "[Smith] points out that there was no cocaine in either the paper he sold to [Geri G.] or in the white ball found in his car and asserts that he never intended to deliver the drug to [Geri G.], but only to 'deceive' or 'rip [her] off.' " *State v. Smith,* Nos. 92–2839–CR, 92–2840–CR, unpublished slip opinion at 6 (Wis. Ct. App. Sept 23, 1993). One might ask how one can support a charge of conspiracy to deliver a controlled substance under the facts of this case where there is a "seller" who had nothing to sell, and a "buyer" who showed that she did not want to buy by calling the police instead of completing the transaction!