STATE of Wisconsin, Plaintiff-Respondent,

v.

Douglas A. CAVALLARI, Defendant-Appellant.†

Court of Appeals

*No. 96–3391–CR. Submitted on briefs August 4, 1997.—Decided October 1, 1997.*

(Also reported in 571 N.W.2d 176.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *James M. Freimuth* assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

NETTESHEIM, J.  Douglas A. Cavallari appeals from a judgment of conviction for conspiring to deliver tetrahydrocannabinol (THC) contrary to §§ 161.14(4)(t), 161.41(1)(h)3 and 161.41(1x), STATS., 1993–94.[1] Cavallari was convicted following a bench trial. On appeal, Cavallari argues that the evidence

---

[1] By 1995 Wis. Act 448, effective July 9, 1996, ch. 161, STATS., was renumbered as ch. 961, STATS., and the specific provisions in question have been renumbered as §§ 961.14(4)(t), 961.41(1)(h)3 and 961.41(1x), STATS. However, these changes were only numerical, not substantive. We will refer to the statutes as numbered at the time of this case.

was insufficient to support the trial court's findings that he had engaged in a conspiracy and that venue in Manitowoc county had been established. We hold that the evidence was sufficient as to both matters. Accordingly, we affirm the judgment.

## *FACTS AND PROCEDURAL HISTORY*

The State filed a criminal complaint against Cavallari alleging that between January 1995 and May 13, 1995, he conspired to unlawfully and intentionally deliver a controlled substance weighing more than 2500 grams contrary to §§ 161.41(1)(h)3 and 161.41(1x), STATS. The complaint further alleged that on May 12, 1995, an officer with the Manitowoc County Sheriff's Department was contacted by an informant who stated that he had made a controlled purchase of marijuana from Robert Boonos. When the informant expressed interest in purchasing a larger amount of marijuana, Boonos advised him that he would be obtaining more marijuana on May 13.

As a result of this information, the investigating officers provided the informant with $600 in prerecorded U.S. currency and a miniature tape recorder. While under surveillance, the informant went to Boonos' residence where he learned that Boonos would be leaving at 10:30 the following morning to obtain more marijuana. When Boonos left his residence the following morning he was under surveillance by members of the Manitowoc County Sheriff's Department and the Metro Drug Unit. Boonos picked up another individual before the officers stopped Boonos' vehicle in Racine county. Boonos and his passenger were then placed under arrest. Boonos and his companion informed the police that they were intending to meet with Cavallari in Waukegan, Illinois, to pick up marijuana.

The complaint also referred to Boonos' testimony at a John Doe proceeding that between January 1995 and May 1995 he had met with Cavallari once or twice per month to obtain approximately one pound of marijuana. Boonos further testified that he then resold the marijuana obtained from Cavallari in the Manitowoc area.

On April 24, 1996, Cavallari waived his right to a jury trial and the matter proceeded to a bench trial. Boonos testified that he had known Cavallari for about five years through their Z-Bart rust proofing businesses. At some point in their relationship, Cavallari began to sell marijuana to Boonos which Boonos would then resell in Manitowoc county where he lived. Boonos further testified that Cavallari became his main supplier in the drug trade in either December 1994 or early in 1995.

Boonos testified that during the period from January to May 1995, he had monthly contact with Cavallari. During those meetings, Boonos would purchase one or two pounds of marijuana a month from Cavallari. He indicated that, at most, he received six pounds of marijuana from Cavallari. The marijuana was sold to Boonos on credit, or "fronted" to him by Cavallari. Boonos would pay Cavallari for the previous delivery when he picked up a new delivery. The actual transactions took place along Interstate Highway 43 in Wisconsin, although the particular county where the sales occurred was not established.

Boonos also testified as to the circumstances surrounding his arrest. He stated that he and another man, Tony Dorsett, were en route to pick up four pounds of marijuana from Cavallari when they were arrested. The police discovered $1400 in cash on Boonos and $4000 in cash on Dorsett. Lieutenant Mark

Anderson of the Manitowoc County Sheriff's Department testified that some of the currency Dorsett was carrying matched the prerecorded numbers on the currency which the undercover agent had given to Boonos.

The trial court found Cavallari guilty of conspiring to deliver controlled substances, stating that "there was an on-going continuing arrangement between [Cavallari] and Mr. Boonos for the sale and delivery of marijuana, that these were not isolated transactions, in part the number, the frequency, the amounts and the fronting arrangement all speak in favor of that conclusion." The court additionally found that venue in Manitowoc county had been established. Cavallari appeals both findings.

## DISCUSSION

### Standard of Review

Cavallari contends that the evidence introduced at trial was insufficient to prove a conspiracy to deliver controlled substances. He argues that the evidence established nothing more than mere "spot sales" between himself and Boonos.

Whether the buy-sell agreement between Cavallari and Boonos constituted a conspiracy under § 161.41(1x), STATS., is a question of law which this court reviews de novo. *See State v. Smith*, 189 Wis. 2d 496, 501, 525 N.W.2d 264, 266 (1995). However, in reviewing the sufficiency of the evidence to support a conviction, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a

reasonable doubt." *State v. Poellinger,* 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757–58 (1990).

*Conspiracy to Deliver Controlled Substances*

### 1. The Law

We first address the law of conspiracy in Wisconsin. We do so acknowledging that the parties do not appear to dispute our ultimate conclusion that a conspiracy delivery pursuant to § 161.41(1x), STATS., requires proof of an *agreement* between the parties to the conspiracy that some of the contraband is intended for further delivery to a third party.

The definition of conspiracy is set forth in § 939.31, STATS., which states: "Except as provided in ss. 161.41(1x), 940.43(4) and 940.45(4), whoever, with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime may, if one or more of the parties to the conspiracy does an act to effect its object, be fined or imprisoned or both . . . ." Pursuant to this statute, a person convicted of a conspiracy is subject to the penalties for the completed crime. However, a person found guilty of conspiring to unlawfully manufacture or deliver a controlled substance is subject to the penalties as set forth in § 161.41(1x), STATS.[2] *See* § 939.31.

_____

[2] We recognize that one of the exceptions recited in § 939.31, STATS., is § 161.41(1x), STATS., the section under which Cavallari was convicted in this case. However, the exception has nothing to do with the substantive definition of a conspiracy. Instead, as we have explained, the exception pertains to the different penalties which flow from a conspiracy conviction under § 161.41(1x) as compared to those which flow from a conviction under § 939.31. This is confirmed by the language of

A conspiracy is generally "an agreement between two or more persons to accomplish a criminal objective." *State v. Blalock*, 150 Wis. 2d 688, 704, 442 N.W.2d 514, 520 (Ct. App. 1989). In *Smith*, 189 Wis. 2d at 498, 525 N.W.2d at 265, our supreme court addressed whether an agreement between a buyer and a seller for delivery of a small amount of a controlled substance for personal use by the buyer constituted a conspiracy to deliver a controlled substance under § 161.41(1x), STATS.

■

Reversing Smith's conviction, the supreme court concluded that the legislature did not intend a buyer-seller relationship for a small amount of drugs for a buyer's personal use to be deemed a conspiracy. *See Smith*, 189 Wis. 2d at 501, 525 N.W.2d at 266. In doing so, the *Smith* court cited to *United States v. Moran*, 984 F.2d 1299, 1304 (1st Cir. 1993), which stated, " 'As for the classic single sale—for personal use, without prearrangement, and with nothing more—the precedent in this circuit as well as others treats it as not involving conspiracy.' " *See Smith*, 189 Wis. 2d at 503–04, 525 N.W.2d at 267.

Although *Smith* definitively states when a buyer-seller relationship is not a conspiracy, it does not expressly identify when such a relationship might ripen into, or constitute, a conspiracy. The court did suggest, however, that when two persons in a relationship to buy and sell controlled substances effectively agree to further distribution of the controlled substances to one or more third parties, the buyer and seller will be criminally liable for conspiracy. *See id.* at 501, 525 N.W.2d at 266. The court stated:

§ 161.41(1x), which equates a conspiracy under that statute with that contemplated by § 939.31.

> [A] conviction for conspiracy to deliver a controlled substance cannot be upheld where the only evidence presented by the State was that the seller purported to have in his possession and agreed to sell a small amount of the controlled substance consistent with personal use to the buyer and *where there was not even a claim that the buyer intended to sell, deliver or give the controlled substance to a third party.*

*Id.* at 498–99, 525 N.W.2d at 265 (emphasis added).

The State also cites to *Blalock* in further support of its view that there is a "third-party" requirement for a conspiracy to deliver controlled substances. In *Blalock*, the court upheld a conviction for conspiracy, concluding:

> [T]he criminal objective was the delivery of marijuana from Blalock [the seller] to Thomas [the buyer]. . . . [R]esale by Thomas of at least a portion of the quarter pound of marijuana Blalock had agreed to sell him was a foreseeable way of financing the purchase. Resale, and efforts at resale, were thus in furtherance of the conspiracy . . . .

*Blalock*, 150 Wis. 2d at 704, 442 N.W.2d at 520.

Based on the reasoning employed in *Blalock* and implicit in the supreme court's statements in *Smith*, we conclude that in order to establish a conspiracy for purposes of § 161.41(1x), STATS., the State must present evidence that an agreement existed between the seller and the buyer that the buyer will deliver at least some of the controlled substances to a third party.

## 2. Conspiracy: Sufficiency of the Evidence

With that threshold determination in place, we turn to the disputed issue in this case: whether there was sufficient evidence from which a trier of fact could conclude beyond a reasonable doubt that Cavallari and Boonos reached a conspiratorial agreement for the further distribution of the contraband which Cavallari provided to Boonos.

■ The State contends that the evidence presented fully satisfied this "third-party" requirement and demonstrated that Cavallari had a "tacit agreement" under which Boonos would deliver the marijuana supplied by Cavallari to third parties. Cavallari responds that we should not permit evidence of a "tacit agreement" when "the State has the ability to put on, through its own witness, the full conspiratorial agreement." However, Cavallari offers no law in support of his argument that the "tacit agreement" rule should not be applied when testimony from a member of the alleged conspiracy is available at trial. Moreover, this argument is wrongly, or naively, premised. It assumes that criminal conspirators will choose to memorialize their agreements beyond the "tacit" stage. Criminal conspiracies are by their very nature covert. Smart criminals do not conduct their affairs with the formality which attends legitimate contracts. In fact, the law is contrary to Cavallari's argument. A conspiratorial agreement may be demonstrated by circumstantial evidence. *See State v. Seibert*, 141 Wis. 2d 753, 762, 416 N.W.2d 900, 904 (Ct. App. 1987). "The agreement need

not be an express agreement; rather, a mere tacit understanding of a shared goal is sufficient." *Id.*[3]

Both parties rely on *United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991), as to what constitutes an "agreement" for purposes of conspiring to deliver controlled substances. The State cites to *Townsend* for the proposition that if A sells drugs to B and "A knows of, and benefits from, B's subsequent distribution, we may infer a limited agreement to distribute between A and B." *See id.* at 1392. However, as Cavallari points out, the *Townsend* court additionally observed that:

> "A seller of narcotics in bulk surely knows that the purchasers will undertake to resell the goods over an uncertain period of time, and the circumstances may also warrant the inference that a supplier or a purchaser indicated a willingness to repeat. But a sale or a purchase scarcely constitutes a sufficient basis for inferring agreement to cooperate with the opposite parties *for whatever period of time they continue to deal in this type of contraband, unless some such understanding is evidenced by other conduct which accompanies the transaction.*"

*Id.* (quoting *United States v. Borelli*, 336 F.2d 376, 384 (2nd Cir. 1964)). The important distinction which *Townsend* makes is that mere *knowledge* by the supplier of the purchaser's intent to further distribute the contraband is not enough. Rather, the evidence must

---

[3] Additional cases supporting a finding of conspiracy based on circumstantial evidence are *United States v. Kozinski*, 16 F.3d 795, 807–08 (7th Cir. 1994) (a jury is allowed "to infer from circumstantial evidence that a conspiracy existed") and *United States v. Townsend*, 924 F.2d 1385, 1390 (7th Cir. 1991) ("Conspiracies, like other crimes, may be proved entirely by circumstantial evidence.").

show an *agreement* between the parties. *See Townsend,* 924 F.2d at 1392.

Cavallari argues that the State failed to present sufficient evidence that such an understanding existed between himself and Boonos. We disagree. We conclude that the conduct surrounding the transactions constitutes a sufficient basis for inferring an agreement between Cavallari and Boonos to deliver drugs to third parties. We base our conclusion on the following evidence.

First, the facts in this case do not involve the single sale of drugs as in *Smith.* Rather, Boonos testified that between January 1995 and May 13, 1995, he and Cavallari engaged in a series of monthly sales of marijuana in quantities of a pound or more at a time.

Second, the anticipated transaction on May 13, 1995, interrupted by the arrest of Boonos and Dorsett, contemplated a sale of some magnitude. Boonos was intending to meet with Cavallari and he and Dorsett were carrying $6500 with them "in the hopes of being able to purchase a large quantity of at least four pounds or more." Thus, a trier of fact could reasonably infer that the quantity of marijuana sold to Boonos was inconsistent with personal use.

Third, and most importantly, Boonos did not have to pay Cavallari for the contraband delivered until the next arranged pickup date. Boonos testified that he and Cavallari would meet at an agreed location where Cavallari would be paid for the previous delivery from proceeds of Boonos' resales of the prior delivery. Cavallari would then deliver Boonos a new supply of marijuana and Cavallari would tell Boonos what price he needed for it. There were no negotiations about the price. Boonos was informed of the price and made his resale arrangements accordingly. This evidence estab-

lished that Cavallari "fronted" the marijuana for Boonos' resales and that both he and Cavallari had an understanding to that effect.

In summary, we conclude that the evidence provided a sufficient basis for the trial court, acting as the trier of fact, to reasonably conclude that Cavallari and Boonos had an agreement whereby Cavallari would deliver drugs to Boonos for purposes of Boonos' further sales to third parties. As such, a conspiracy was sufficiently proven. We affirm the trial court's finding of a conspiratorial agreement.

### 3. Venue: Sufficiency of the Evidence

Next, we address Cavallari's argument that the State did not present sufficient evidence to establish venue in Manitowoc county under § 971.19(1), STATS. Cavallari argues that venue is lacking because "none of the Cavallari-Boonos transactions took place in Manitowoc County [and] [t]here were no agreements struck or deals made in Manitowoc County."

Venue is not an element of a charged crime, but merely refers to the place of trial. *See State v. Dombrowski*, 44 Wis. 2d 486, 501, 171 N.W.2d 349, 357 (1969). While the State must prove venue beyond a reasonable doubt, *id.* at 502, 171 N.W.2d at 357, venue "may be established by proof of facts and circumstances from which it may be inferred," *Smazal v. State*, 31 Wis. 2d 360, 363, 142 N.W.2d 808, 809 (1966).

Neither the parties' research, nor ours, has revealed a statute or case which addresses the question of proper venue where the conspiracy activity involves multiple venues. However, § 971.19(2), STATS., provides that "[w]here 2 or more acts are requisite to the commission of any offense, the trial may be in any

54

county in which any of such acts occurred." As we have already noted, § 939.31, STATS., defines a conspirator as one who "with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime" and that "one or more of the parties to the conspiracy does an act to effect its object."

Here, Boonos testified that he arranged marijuana transactions with Cavallari by telephone from his home in Manitowoc county. Furthermore, Boonos sold the marijuana obtained through Cavallari to third parties in Manitowoc county. As such, Boonos, as one of the conspirators, performed acts in Manitowoc which effected the object of the conspiracy. We are unaware of any law which holds that the conspiratorial agreement must include an understanding or knowledge by the accused conspirator as to the particular venue of the further intended conspiratorial acts.

The trial court correctly ruled that the evidence sufficiently established venue in Manitowoc county.

### CONCLUSION

We conclude that in order to prove a delivery conspiracy under §§ 161.41(1x) and 939.31, STATS., the State must establish an agreement between two or more persons for further delivery of some of the contraband to a third party. We further conclude that the State presented sufficient evidence to show such an agreement in this case. Finally, we hold that the evidence sufficiently established venue in Manitowoc county. We affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.