COURT OF APPEALS
DECISION
DATED AND FILED

November 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP2214-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2019CF1275

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

COLLIN M. KANE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County:  JENNIFER R. DOROW, Judge.  *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Collin M. Kane appeals a judgment of conviction for first-degree reckless homicide by delivery of a controlled substance as a party to a crime. The victim was his girlfriend Helen,[1] who died of a fentanyl overdose. The day prior to her death, Kane had arranged the drug purchase with his ex-girlfriend, who ultimately purchased the drugs for Kane and Helen.

¶2 On appeal, Kane argues the joint-user defense should relieve him of liability under the relevant homicide statute, WIS. STAT. § 940.02(2)(a), because he and Helen simultaneously and jointly acquired the drugs for their own personal use together. He also challenges his trial attorney's failure to object to certain police testimony at his trial, including testimony about the nature of and reason for the charges against Kane and others. Finally, Kane argues that this same testimony was also plain error that necessitates a new trial.

¶3 We conclude that as it relates to party-to-a-crime liability for reckless homicide by delivery of a controlled substance, there is no joint-user defense available under Wisconsin law. We also conclude Kane's trial counsel did not perform deficiently in failing to object to any of the challenged police testimony. That testimony also did not constitute plain error. Accordingly, we affirm.

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86 (2021-22) and the parties' briefing practice, we use a pseudonym for the victim.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

## BACKGROUND

¶4      On the evening of October 7, 2018, Helen died from a fentanyl overdose.  Kane was in her room for the entire day until he abruptly left her house shortly before her body was discovered.  In the preceding hours, he had exchanged panicked text messages with his ex-girlfriend, Alesha Block.  Block had advised Kane to get help for Helen, but Kane had not.

¶5      As the investigation proceeded, police discovered that Kane and Block had exchanged more text messages on the day prior to Helen's death.  Police understood those messages as Kane requesting that Block pick up heroin for him and Helen from their regular dealer, Jevante Winston.[2]

¶6      By the time of trial, it was generally undisputed that Block had purchased the drugs for Kane and Helen.  Kane owed Winston money and could not buy the heroin himself.  He and Helen pooled together $30, met Block, drove with her to the pickup location, gave her the money, and left the car while Block drove to meet Winston.  Block brought back the heroin and broke some off for Kane and Helen.  Then Kane and Helen went back to Helen's house, where they remained until the following day.

¶7      Kane proceeded to trial on a charge of first-degree reckless homicide by delivery of a controlled substance as a party to a crime.  The trial featured extensive testimony from the principal investigating officer, Detective Aaron Hoppe.  The defense's argument was that Kane's role in the drug transaction was

---

[2] Winston—also known as "TJ"—was Kane's dealer first, and Kane had introduced Block to him.

3

so minimal that it did not constitute aiding and abetting the delivery. The jury found Kane guilty, and he was ordered to serve a bifurcated sentence of ten years' initial confinement and eight years' extended supervision.[3]

¶8 Kane filed a postconviction motion seeking the dismissal of the complaint or, alternatively, a new trial. The motion proposed that under the "joint-user defense" recognized in other jurisdictions, Kane could not be found guilty in relation to the delivery of a controlled substance because he and Helen were joint users who simultaneously acquired possession of the drugs solely for their own personal use. Kane also presented ineffective assistance of counsel claims relating to his trial counsel's failure to object to certain of Hoppe's testimony regarding his understanding of the text messages between Kane and Block and the nature of and reason for the charge against Kane, amongst others. Kane also alleged that the admission of certain of Hoppe's testimony was plain error necessitating a new trial.

¶9 Following a *Machner* hearing,[4] the circuit court denied the motion. The court declined to recognize a joint-user defense to Kane's crime under Wisconsin law. The court also determined that Kane's trial counsel was not constitutionally deficient in her handling of Hoppe's testimony, nor did that testimony constitute plain error. Kane now appeals, advancing the same arguments as in his postconviction motion.

---

[3] Following Kane's conviction, first-degree reckless homicide by delivery of a controlled substance was reclassified from a Class C felony to a Class B felony. *See* 2023 Wis. Act 29.

[4] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

## DISCUSSION

I.    *A joint-user defense to reckless homicide by delivery under* WIS. STAT. *§ 940.02(2)(a) is not available to Kane under existing Wisconsin law, and it would be an absurd interpretation of the relevant statutes to recognize such a defense.*

¶10    Using a sufficiency-of-the-evidence lens,[5] Kane argues that he could not be found liable for reckless homicide by delivery of a controlled substance under the circumstances here. Kane does not argue the jury, as instructed, lacked sufficient evidence to convict him of first-degree reckless homicide as a party to a crime. Rather, he argues this court should recognize the joint-user defense articulated in **United States v. Swiderski**, 548 F.2d 445 (2d Cir. 1977), the thesis being that individuals cannot be liable for delivery merely by jointly and simultaneously procuring drugs that they intend to share for personal use.[6] *Cf.* **State v. Smith**, 189 Wis. 2d 496, 501, 525 N.W.2d 264 (1995) (holding that evidence that a buyer desired to purchase a small amount of cocaine for personal use was insufficient to establish a conspiracy to deliver a controlled substance).

¶11    Although Kane argues otherwise, the contours of his proposed joint-user defense are inconsistent with the criminal liability established by Wisconsin law for reckless homicide by delivery of a controlled substance as a

---

[5] We will uphold a conviction under the sufficiency-of-the-evidence standard unless the evidence, viewed most favorably to the conviction, is so lacking in probative value and force that no reasonable trier of fact could have found guilt beyond a reasonable doubt. **State v. Beamon**, 2013 WI 47, ¶20, 347 Wis. 2d 559, 830 N.W.2d 681. The question of whether the evidence was sufficient to sustain a guilty verdict is a question of law that we review de novo. **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

[6] Kane is unclear about the remedy flowing from this requested recognition; he variously proposes that we reverse the judgment of conviction and, as a matter of law, direct the circuit court to enter a judgment of acquittal, or, in the alternative, that we direct the court to hold a new trial (presumably one at which the jury would be instructed about the joint-user defense).

party to a crime. Notably, he frames his argument as an "interpretation" of WIS. STAT. § 940.02(2)(a), but he fails to demonstrate how his interpretation comports with the language of the relevant statutes. This omission is significant: any interpretive task typically begins with the statutory text. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶12 The text of WIS. STAT. § 940.02(2)(a), considered in the context of party-to-a-crime liability, requires that we reject Kane's interpretation. As relevant here, subsec. (2)(a) criminalizes the "delivery"—as defined by WIS. STAT. § 961.01(6) via cross-reference to WIS. STAT. § 961.41—of a controlled substance if another person uses that substance and dies as a result of that use. Section 961.01(6), in turn, generally defines "delivery" as "the actual, constructive or attempted transfer from one to person to another." And party-to-a-crime liability attaches when a person is "concerned in the commission of a crime," meaning the person directly committed the crime, intentionally aided and abetted the commission of the crime, or was party to a conspiracy with another to commit it. WIS. STAT. § 939.05(2)(a)-(c).

¶13 Under this statutory framework, the circuit court correctly ruled that for someone in Kane's position, no joint-user defense is available. To Kane, all that matters is that he and Helen jointly acquired possession of the drugs for their own shared use. Analogizing the situation to one in which one person orders a pizza for a group of people to share, Kane asserts that it is irrelevant for liability purposes that he was the one to facilitate the transaction by coordinating with Block. The plain statutory language requires that we reject this argument.

¶14 Indeed, we recently rejected a sufficiency-of-the-evidence challenge from a defendant who had an even smaller role in the procurement of drugs than

Kane did. In *State v. Hibbard*, 2022 WI App 53, ¶14, 404 Wis. 2d 668, 982 N.W.2d 105, *review denied*, 2023 WI 29, 998 N.W.2d 830, the defendant picked up his daughter and drove her to the place where she had arranged to pick up heroin. Hibbard's text messages were such that the jury could infer he had knowledge that the dealer intended to deliver heroin to his daughter at the meeting spot. *Id.*, ¶14. Hibbard's daughter gave him some of the drugs when they returned home. *Id.*, ¶4.

¶15    In *Hibbard*, the defendant argued too that he engaged in exclusively "buyer-side conduct" that did not fall within the ambit of WIS. STAT. §§ 940.02(2)(a) and 939.05. *Hibbard*, 404 Wis. 2d 668, ¶15. We were unpersuaded, rejecting Hibbard's "fundamentally incorrect premise" that his conduct could only have aided his daughter in acquiring the drugs or the dealer in delivering the drugs, but not both. *Id.*, ¶20. Instead, we recognized that those two concepts were not mutually exclusive: Hibbard both aided his daughter in obtaining the drugs and the dealer in delivering them to her. *Id.*

¶16    We reject Kane's reasoning here for the same reason that we rejected the defendant's "buyer-side conduct" reasoning in *Hibbard*. Kane was the one to reach out to Block to coordinate the transaction, even instructing Block to have her dealer—his dealer, really—stay up waiting for them. It is Kane's actions relative to Block in facilitating the delivery that matter, not his actions relative to Helen as a co-user.

¶17    And while Kane attempts to distinguish *Hibbard* as "not a joint-user case" because the defendant and his daughter did not use the drugs together, his proposed interpretation produces absurd results. *See Kalal*, 271 Wis. 2d 633, ¶46 (observing statutory language is interpreted to avoid absurd or unreasonable

results). Kane's construction of WIS. STAT. §§ 940.02(2)(a) and 939.05 arbitrarily restricts criminal liability for delivery based on whether a defendant uses (or intends to use) the drugs they helped deliver with the deceased individual.

¶18 To elaborate on that point, and as Kane's trial counsel emphasized to the jury, the spectrum of actions that can give rise to party-to-a-crime liability is broad. Kane gives an almost talismanic quality to a person's decision to use some of the drugs he or she procures with the victim, but he fails to demonstrate why this result is justified under the law. As set forth above, Kane was certainly a co-user; but as the jury recognized, he was also a key cog in the delivery mechanism. Kane does not directly grapple with this dual concept, and it seems evident his proposed interpretation would merely prompt further litigation about what it means to be a "joint user."[7]

¶19 Existing case law highlights the absurdity of the interpretation Kane proposes. The defendant in *Hibbard*, particularly, had a minimal role in the delivery of the drugs that consisted of merely driving the victim to the drug buy. *Hibbard*, 404 Wis. 2d 668, ¶4. Unlike Kane, Hibbard did not use the drugs with the victim, but he did take some of the drugs the victim procured for himself. *Id.* Kane does not provide a satisfactory explanation of why criminal liability should attach for Hibbard's conduct but not for his, particularly when Kane had a much more prominent role in supplying drugs to the victim. Indeed, his involvement in facilitating the drug transaction was at least as much as the defendant in *State v.*

---

[7] To this point, Kane's postconviction motion alleged as a fact that after Block returned with Kane and Helen to the location where she had picked them up, all three "used some of the fentanyl together." Thus, even under the facts of this case, Kane's interpretation falters, as his trial defense was that Block was the much more culpable actor in relation to Helen's death.

*Hecht*, 116 Wis. 2d 605, 607-10, 342 N.W.2d 712 (1984), who was a third party to the drug transaction but nonetheless found criminally liable for the delivery as a party to a crime based upon his introducing the buyer and seller and negotiating the drug transaction. The arbitrary line-drawing Kane proposes is a judicial gloss that is unnecessary in light of the clear statutory commands[8] and existing case law.

II.    *Kane's trial counsel was not constitutionally ineffective for failing to object to Hoppe's testimony about county charging practices or the meaning of Block's text messages.*

¶20    Kane next argues that his trial counsel was constitutionally ineffective for failing to object to certain of Detective Hoppe's testimony. Specifically, he argues that certain of Hoppe's testimony impermissibly instructed the jury about the meaning of the law, while other portions of his testimony contained information of which Hoppe was lacking in personal knowledge.

¶21    The Sixth Amendment guarantees a defendant the effective assistance of counsel. *State v. Savage*, 2020 WI 93, ¶27, 395 Wis. 2d 1, 951 N.W.2d 838. We review an ineffective assistance of counsel claim using a mixed standard of review. *Id.*, ¶25. The circuit court's factual findings, including those regarding trial counsel's conduct and strategy, will not be overturned unless they are clearly erroneous, but we review de novo whether counsel's conduct constitutes constitutionally ineffective assistance. *Id.*

¶22    To prevail on an ineffective assistance claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Id.*; *see also Strickland v. Washington*,

---

[8] At least, no one has suggested here that the relevant statutes are ambiguous.

466 U.S. 668, 687 (1984). If the defendant fails to establish either prong, we need not address the other. *Savage*, 395 Wis. 2d 1, ¶25.

¶23 To demonstrate deficient performance, the defendant must show that his or her attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.*, ¶28. We presume that counsel's conduct fell within the wide range of reasonable professional assistance, and we will grant relief only upon a showing that counsel's performance was objectively unreasonable under the circumstances. *Id.* Prejudice is demonstrated by showing a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Id.*, ¶32.

> A. *Hoppe's testimony about "[t]he way the law is written" was provided in the context of discussing the reason for the charging decisions made in relation to Winston, Block, and Kane, and Kane's counsel's decision not to object was prompted by strategic considerations.*

¶24 The resolution of Kane's challenge requires a contextual review of Hoppe's testimony. Early on, the State established that all overdose deaths in Waukesha County are investigated by the Sheriff's Department. Hoppe testified the investigation begins with the person that died and involves "moving up the ladder" to "find out who played a role, whether there was financial, transportation, calling, setting up the transaction," or other involvement. He continued that his office had a high clearance rate, estimating that about ninety percent of cases ended with a referral of charges.

¶25 On cross-examination, Kane's trial counsel believed she could use that information—as well as Hoppe's acknowledgement that Block had been referred for charges—to Kane's benefit. Her theory of the case was that the State

was overreaching in its theory that Kane was the "idea guy" who had pursued heroin from his own dealer. She and her co-counsel were eager to put that theory before the jury in the hopes that the jury would conclude Kane's role was so minimal that he should not be held liable for the delivery. She wanted to emphasize that Kane's role was much different than the roles of Winston and Block in the drug transaction. In essence, she wanted to make a burden-of-proof defense.

¶26 Thus, Kane's trial counsel, on cross-examination, focused on Block's culpability, emphasizing that Block had seemingly also purchased drugs during the transaction, that she had heroin in her possession at the time she was taken into custody, that she was evasive during police questioning, and that she had had extensive contacts with Winston outside of Kane.

¶27 Kane's trial counsel also asked Hoppe about whether charges had been referred for Winston. Over the State's objection, Hoppe was permitted to testify that he had not referred charges to the Waukesha County District Attorney's Office for Winston and that Winston had not been charged in Waukesha County, though he was involved in some federal proceedings.[9]

¶28 It is Hoppe's testimony offered in response to this line of questioning during re-direct examination that Kane views as problematic. Hoppe answered affirmatively to the prosecutor's question about whether more than one person could be charged relating to a single death, and then discussed why that was so:

---

[9] The circuit court determined the State had opened the door to such testimony by questioning Hoppe during direct examination about whether Block had been charged.

A The way the law is written, if you take part in a transaction that led to someone's death, whether you again provided transport, whether you played a role, whether you set up the deal, provided money, you facilitated … that transaction.

 And if that transaction leads to someone's death, whoever is responsible, whoever played a role in any manner, again, taking them down for the transportation, chipping in money, setting it up themselves, using their phone to set up that transaction, it's common for us to charge anyone. We have to hold anyone responsible for that person's death.

Q So that would include [Winston], the Milwaukee for-profit drug dealer guy, right?

A Yes.

Q And sometimes you testified that includes family members or friends of the person that died?

A Yes.

Q And sometimes are those people not a drug dealer, the way that maybe jurors think of that term?

A Yes, it's a middle person. It's somebody who is not a drug dealer.… In unfortunate circumstances, while it's not the intent, it leads to someone's death, unfortunately they're still held liable.

Q So in this case, this includes both the defendant and Alesha Block?

A Yes, very much so.

Kane's trial counsel testified at the *Machner* hearing that this testimony supported her burden-of-proof defense that the State was casting too wide a net for anyone even tangentially related to the overdose death and that she made a conscious decision not to object.

¶29 We agree that this was a reasonable strategic decision by defense counsel that does not constitute constitutionally ineffective assistance. Considered

in its context, the challenged testimony related to the charging practices in Waukesha County, not to the black-letter elements of state law or to Kane's guilt. *See State v. McDowell*, 2003 WI App 168, ¶62 n.20, 266 Wis. 2d 599, 669 N.W.2d 204, *aff'd*, 2004 WI 70, 272 Wis. 2d 488, 681 N.W.2d 500 (observing that the court, not a witness, is the expert on domestic law); *Roe v. State*, 95 Wis. 2d 226, 248, 290 N.W.2d 291 (1980) (holding that expert witnesses may not give an opinion as to the guilt or innocence of a defendant).  Thus, we are not persuaded an objection was necessary.

¶30     Moreover, Kane's trial counsel reasonably regarded the testimony as supporting her theory of the defense.  She made this explicit during her closing argument, where she highlighted all of the things Block did to set up the drug buy and portrayed Kane as a bystander who did not—and could not, given the debt he owed to Winston—assist with the delivery.  Trial counsel's decision not to object was within the wide range of constitutionally permissible assistance, as the reasonable strategic choices of counsel when presented with several plausible options are "virtually unchallengeable."  *Strickland*, 466 U.S. at 690.

> B.     *Hoppe's testimony about the meaning of Block's text messages was not impermissible lay testimony necessitating an objection by defense counsel.*

¶31     During Hoppe's testimony, he read, and discussed, the various text messages that Kane and Block had exchanged on the night before Helen's death. Kane had sent Block a message asking, "how are you doing on stuff?"  Hoppe construed "stuff" to mean heroin, and he testified Block replied, "I'm fine R N, right now, and probably until tomorrow …."  Hoppe was asked whether, based on the messages, it appeared that Block "needed to go to Milwaukee this night to pick up heroin for herself?"  He answered in the negative.  His testimony left the clear

impression with the jury that Block had arranged the drug transaction with Winston only at Kane's behest.

¶32     Kane contends this testimony was impermissible lay testimony for which Hoppe was lacking personal knowledge, and that Kane's trial counsel should have objected.  At the *Machner* hearing, trial counsel testified she did not object because she viewed Hoppe's interpretation as "a reasonable interpretation of the words themselves."  Indeed, Kane's trial counsel had used Hoppe's testimony during her cross-examination, emphasizing that even if Block was "fine" on the night of October 6, she would need more heroin at some point soon—a proposition with which Hoppe agreed.

¶33     Like the circuit court, we note that the challenged testimony cannot be viewed in a vacuum.  *See State v. Mull*, 2023 WI 26, ¶36, 406 Wis. 2d 491, 987 N.W.2d 707 ("[W]e examine counsel's choices 'in the context of the circumstances as they existed at the time he made his decisions.'" (citation omitted.)).  There was really no dispute at trial that Kane, Block, and Helen were using heroin and that they were procuring the drugs from Winston.  The inference Hoppe drew about Block's drug needs (or lack thereof) on the night of the buy was readily apparent from the messages themselves and from the overall context of the case.

¶34     In choosing not to object to Hoppe's commonsense understanding of the text messages, trial counsel made a reasonable strategic decision that we will not overturn based on mere hindsight—particularly because Kane's counsel returned to the matter during cross-examination to highlight Block's culpability. *See id.*, ¶35.  Kane has failed to persuade us that Hoppe's testimony on this point

was improper "opinion" testimony or speculation, such that an objection was necessary.

### III. Hoppe's testimony regarding county charging practices was not plain error.

¶35 Kane's final argument is that Hoppe's testimony about Waukesha County charging practices was plain error. Though Kane does not develop much of an argument on this point, we note that the relevant standard is whether the testimony "so infected the trial with unfairness as to make the resulting conviction a denial of due process." **State v. Davidson**, 2000 WI 91, ¶88, 236 Wis. 2d 537, 613 N.W.2d 606. Kane does not articulate or apply the standard, and our review of the appellate record does not support such a claim. The jury was properly informed that the law it was to apply to the facts was the law stated by the circuit court during the jury instructions.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.