**2022 WI App 53**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2020AP1157-CR

†Petition for Review filed

Complete Title of Case:


> **STATE OF WISCONSIN,**
>
>    **PLAINTIFF-RESPONDENT,**
>
> **V.**
>
> **TERRY L. HIBBARD,**
>
>    **DEFENDANT-APPELLANT.†**


| | |
|---|---|
| Opinion Filed: | September 16, 2022 |
| Submitted on Briefs: | June 16, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the brief of *Megan Sanders-Drazen,* assistant state public defender, Madison |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sara-Lynn Shaeffer*, assistant attorney general, *Joshua L.* Kaul, attorney general. |

**2022 WI App 53**

COURT OF APPEALS
DECISION
DATED AND FILED

September 21, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1157-CR**

Cir. Ct. No. **2018CF111**

STATE OF WISCONSIN

IN COURT OF APPEALS

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TERRY L. HIBBARD,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Ozaukee County: PAUL V. MALLOY, Judge. *Affirmed.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 NEUBAUER, J. This appeal requires us to examine Wisconsin's "Len Bias" law, WIS. STAT. § 940.02(2)(a) (2017-2018),[1] which makes the "manufacture, distribution or delivery" of a controlled substance a first-degree reckless homicide offense if "another human being uses the controlled substance … and dies as a result of that use," and WIS. STAT. § 939.05, which as relevant here makes a person liable for a criminal offense if the person "[i]ntentionally aids and abets" its commission.[2] A jury found Terry L. Hibbard guilty of first-degree reckless homicide, party to a crime, contrary to §§ 940.02(2)(a) and 939.05, as the result of his involvement in a drug deal that led to the death of his daughter from an overdose. Hibbard appeals the judgment of conviction and an order denying his postconviction motion, contending that the evidence to prove that he aided and abetted the seller's delivery of the drugs to his daughter, the buyer, was insufficient, or, if sufficient, that § 940.02(2)(a) is unconstitutionally vague as applied to aiders and abettors. We reject Hibbard's challenges and affirm the judgment and order.

## BACKROUND

¶2 The evidence presented at Hibbard's trial established the following facts. On Monday, July 10, 2017, the Ozaukee County Sheriff's Department responded to a report of a deceased person at Hibbard's residence. Upon arrival, the responding officer encountered Hibbard and his wife, who directed the officer to a bedroom in which Hibbard's 32—year old daughter, Taralyn, lay dead. A detective with the department responded to the scene and located: (1) a syringe near Taralyn's body which was later determined to contain heroin and fentanyl; (2) a

---

[1] Len Bias was a prominent basketball player for the University of Maryland who died of a cocaine overdose. *See State v. Patterson*, 2010 WI 130, ¶37, 329 Wis. 2d 599, 790 N.W.2d 909.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

"drug kit" in the bedroom containing a lighter and additional syringes; and (3) Taralyn's cell phone. The detective also observed bruises and contusions on Taralyn's body that he suspected could have been injection sites. The medical examiner who performed an autopsy on Taralyn found heroin and fentanyl in her system and determined the cause of death to be acute mixed drug intoxication.

¶3     Another officer who responded to the scene spoke with Hibbard. Hibbard told the officer that Taralyn "did not have access to a vehicle" and did not drive. He also denied knowing that Taralyn was using drugs. Through further investigation, the officer learned that Taralyn had spent the weekend before her death with a friend at his residence in Sullivan, Wisconsin. Text messages on Taralyn's phone showed that she had communicated with Hibbard over the weekend about bringing drugs back to Hibbard's residence when she returned. The messages reflected Hibbard's interest in obtaining drugs. The messages also showed that Taralyn asked Hibbard to meet her at a fast food restaurant where she would be dropped off and to "[b]ring your pipe." Taralyn's phone also contained text messages between her and a person identified as "Cheese" about purchasing heroin.

¶4     After reviewing these messages, the police reinterviewed Hibbard, who told them that after picking up Taralyn on Sunday, July 9, he drove her to an apartment complex in Milwaukee where she purchased heroin from Cheese. Hibbard and Taralyn then returned to his residence, where she gave him some of the heroin. Taralyn was found dead in her bedroom the following morning.

¶5     The police identified Cheese as Davion Poe. Poe was arrested and ultimately convicted of reckless homicide. Following Poe's conviction, the police arrested Hibbard and charged him with first-degree reckless homicide, as party to a crime, in violation of WIS. STAT. §§ 940.02(2)(a) and 939.05. Hibbard pled not

3

guilty and, after the close of evidence at trial, moved to dismiss the case arguing that the State had not established a prima facie case for liability under § 939.05 because there was no evidence that Hibbard had aided or abetted Poe. At most, Hibbard argued, the evidence showed that he had helped Taralyn obtain the drugs; it did not show that Poe was aware that Hibbard would assist him in delivering the drugs to Taralyn. The circuit court did not rule on the motion, saying it would look at the relevant jury instructions and consider the parties' arguments.

¶6 The following day, the circuit court finalized the jury instructions with the parties but did not mention the motion to dismiss. The court instructed the jury on the elements of the first-degree reckless homicide offense and the legal standards governing liability under WIS. STAT. § 939.05(2)(a) and (b) for "[d]irectly commit[ting]" or "[i]ntentionally aid[ing] and abet[ting] the commission of" the homicide offense. In its closing argument, the State told the jury that the "whole key here is whether or not the defendant's conduct as it is … whether that conduct fits the crime that he's been charged with. In other words, whether or not he truly was an aider and abettor." The jury found Hibbard guilty and the circuit court sentenced him to six years of initial confinement, followed by four years of extended supervision.

¶7 Hibbard filed a postconviction motion, arguing that the evidence was insufficient to show he aided and abetted Poe's delivery of drugs to Taralyn and that, if he was liable for her death, then WIS. STAT. § 940.02(2)(a) was unconstitutionally vague. The circuit court denied Hibbard's motion. The court rejected Hibbard's first argument because the evidence showed that Hibbard "did things that put this deal, that enabled Poe to deliver the drugs. Without Terry Hibbard's participation and assistance to Taralyn to getting there, she wouldn't get the heroin." Hibbard "knew that Poe was going to be committing a criminal act,

4

and he acted in furtherance of that conduct. He was aware of the fact that a crime was being committed, and participated in its perpetration by driving Taralyn." This was sufficient, in the court's view, to submit the case to the jury.

¶8 The court also rejected Hibbard's vagueness challenge, invoking the presumption of constitutionality and concluding that WIS. STAT. § 940.02(2)(a) "is [not] unconstitutional in terms of what it allows a reasonable person to discern about their conduct approaching criminal conduct." Hibbard appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

¶9 Hibbard first challenges the sufficiency of the evidence to support his conviction. This court independently reviews whether the evidence was sufficient to sustain the jury verdict, "but in so doing, we view the evidence most favorably to sustaining the conviction." *State v. Hanson*, 2012 WI 4, ¶15, 338 Wis. 2d 243, 808 N.W.2d 390. Evidence is insufficient to support a conviction only if, viewed most favorably to the State, it "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶10 The interpretation and application of WIS. STAT. §§ 940.02(2)(a) and 939.05 are integral to Hibbard's sufficiency-of-the-evidence challenge. The proper interpretation of a statute presents a question of law that we review independently. *State v. Grandberry*, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214. We begin with the text of those statutes.

5

¶11 WISCONSIN STAT. § 940.02(2)(a) makes it a Class C felony to "manufacture, distribut[e], or [deliver] … a controlled substance … if another human being uses the controlled substance … and dies as a result of that use." This statute "was created as a specific type of criminal homicide to prosecute anyone who provides a fatal dose of a controlled substance." *State v. Patterson*, 2010 WI 130, ¶37, 329 Wis. 2d 599, 790 N.W.2d 909. A "delivery" under the statute occurs when a controlled substance is transferred from one person to another. WIS JI—CRIMINAL 1021; WIS. STAT. § 961.01(6).

¶12 The other statute involved, WIS. STAT. § 939.05, makes a person "concerned in the commission" of an offense criminally liable for that offense even though the person "did not directly commit it." As relevant here, § 939.05(2)(b) provides that a person is "concerned in the commission of the crime" if the person "[i]ntentionally aids and abets the commission of it." In *Krueger v. State*, 84 Wis. 2d 272, 267 N.W.2d 602 (1978), our supreme court explained that the elements of aiding and abetting are (1) "undertak[ing] conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime" and (2) "consciously desir[ing] or intend[ing] that [the] conduct will yield such assistance." *Id.* at 285 (citation omitted). These concepts have been incorporated into pattern jury instructions which provide that a person "intentionally aids and abets the commission of a crime when, acting with knowledge or belief that another person is committing or intends to commit a crime," the person knowingly either (1) "assists the person who commits the crime" or (2) "is ready and willing to assist and the person who commits the crime knows of the willingness to assist." WIS JI—CRIMINAL 400, 405, 406.

¶13 Viewed in the light most favorable to the State, the evidence at trial was sufficient to sustain Hibbard's conviction. The jury heard that Poe sold heroin

to Taralyn, who took it to Hibbard's home and into the room where she was found dead the next day. An autopsy revealed the presence of heroin and fentanyl in her system, and the medical examiner identified the cause of her death as acute mixed drug intoxication. From these facts, which were undisputed, the jury could easily have concluded that Taralyn died from using the drugs Poe sold to her.

¶14 The evidence was also sufficient to establish that Hibbard intentionally aided and abetted the sale of the heroin to Taralyn. First, the jury could conclude that the text messages between Hibbard and Taralyn established his knowledge that Poe intended to deliver heroin to her, and that he picked up Taralyn and drove her to the place where she had arranged to meet Poe in order to facilitate that transaction. The jury could conclude from these facts, which again were undisputed, that Hibbard had knowingly assisted in Poe's delivery of the heroin that killed his daughter.

¶15 Hibbard's argument to the contrary is not persuasive. Hibbard contends that the evidence at trial showed, at most, that he assisted Taralyn in buying drugs, not Poe in selling them. In Hibbard's view, his exclusively "buyer-side conduct" is insufficient to support a conviction under WIS. STAT. §§ 940.02(2)(a) and 939.05 in light of the different approaches Wisconsin law takes to dealing with those who traffic in illegal drugs and those who merely use them.

¶16 In support of this argument, Hibbard points to WIS. STAT. § 961.001(2), a statement of legislative intent that those "who habitually or professionally engage in commercial trafficking in controlled substances … should … be sentenced to substantial terms of imprisonment to shield the public from their predatory acts" whereas those "addicted to or dependent on controlled substances should, upon conviction, be sentenced in a manner most likely to produce

7

rehabilitation." Hibbard also cites two Wisconsin Supreme Court decisions, *State v. Hecht*, 116 Wis. 2d 605, 342 N.W.2d 721 (1984) and *State v. Smith*, 189 Wis. 2d 496, 525 N.W.2d 264 (1995).

¶17 In *Hecht*, the defendant communicated with an undercover agent to arrange the agent's purchase of cocaine from a source known to a person who had previously provided cocaine to Hecht. *Hecht*, 116 Wis. 2d at 607-08. Though Hecht was not present when the source presented the cocaine to the agent, he was arrested and convicted of being a party to the crime of possession of a controlled substance with intent to deliver. *Id.* at 609-10. The supreme court affirmed the conviction after concluding that the evidence of Hecht's involvement in the transaction was sufficient for a reasonable jury to have found him liable as an aider and abettor. *Id.* at 622. The court acknowledged the difficulty in defining "what degree of conduct is needed to satisfy a charge of aiding and abetting" but concluded that Hecht's actions in introducing persons involved in the transaction, relaying information between them, and accompanying the participants to several meetings were sufficient to establish that he assisted in the execution of the crime and intended his conduct to achieve that result. *Id.* at 621-24 (describing Hecht's conduct as having "put into motion the wheels of a mechanism that would ultimately lead" to the sale and "kept those wheels turning in a fluid motion.").

¶18 In *Smith*, 189 Wis. 2d at 498-99, the supreme court found the evidence of Smith's involvement in a drug transaction insufficient to sustain a conviction for conspiracy to deliver a controlled substance. Smith had sold a small quantity of cocaine to a bartender and later returned to the bar and told her that he would sell her a larger amount. *Id.* at 499-500. The evidence did not show that the buyer "intended to further deliver the cocaine[,] which would be a felony," and the supreme court held that "the legislature did not intend a buyer-seller relationship for

a small amount of … cocaine for the buyer's personal use to be a conspiracy and thus make the buyer guilty of a felony." *Id.* at 501. A contrary finding, in the court's view, would enable drug users to be punished as severely as distributors. *Id.* at 502-03.

¶19 Describing his case as "a *Smith* case," Hibbard contends that WIS. STAT. §§ 940.02(2)(a) and 939.05 should be construed not to hold "a person involved exclusively with the buyer's side of a drug deal … liable for the seller's crimes."

¶20 Hibbard's repeated characterization of his actions as "buyer-side conduct" is inaccurate. It rests on the fundamentally incorrect premise that his conduct could *only* aid Poe or Taralyn, but not both. In picking up Taralyn—who could not drive—and driving her to meet Poe, Hibbard assisted both Poe's delivery of heroin and his daughter's acquisition of it. That Hibbard did not communicate directly with Poe, and may have wanted to obtain some of the drugs for his own use, does not change the fact that his conduct assisted Poe in delivering the drugs to Taralyn. Hibbard's conduct falls within the text of the statutes.

¶21 We are not convinced that the legal authorities upon which Hibbard relies compel a contrary conclusion. WISCONSIN STAT. § 961.001(2)'s declaration of legislative intent that the sentences for drug traffickers and drug users be informed by different goals—retribution and deterrence for traffickers, rehabilitation for users—bears little relevance here because Hibbard's conviction does not stem from his drug use, but rather from his efforts to facilitate a drug sale that resulted in a fatality. Similarly, *Smith* neither controls nor meaningfully informs our analysis of this case. The defendant in *Smith* was not charged with aiding and abetting under WIS. STAT. § 939.05(2)(b), and the *Smith* court's

expression of concern about our state's criminal laws being used to excessively punish buyers who purchase drugs for their personal use is of no import here. If anything, Hibbard's role and conduct in the drug deal are more analogous to that of the defendant in *Hecht*. Neither Hibbard nor Hecht bought or sold drugs, but both took action that facilitated sales and did so intending that they be completed.

## II. Vagueness

¶22 Hibbard's second argument is that, if the evidence was sufficient to sustain his conviction under WIS. STAT. §§ 940.02(2)(a) and 939.05(2)(b), then the "interplay" between those statutes renders § 940.02(2)(a) unconstitutionally vague as applied to aiders and abettors. This argument presents a legal question that this court reviews independently. *State v. Lasecki*, 2020 WI App 36, ¶11, 392 Wis. 2d 807, 946 N.W.2d 137.

¶23 The legal standards governing a vagueness challenge are well settled. We begin with the presumption that the statute is constitutional, *State v. Barrett*, 2020 WI App 13, ¶14, 391 Wis. 2d 283, 941 N.W.2d 866, and we review it with an eye towards preserving its constitutionality. *See State v. Pittman,* 174 Wis. 2d 255, 276, 496 N.W.2d 74 (1993). We will not invalidate a statute on vagueness grounds "if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources." *State v. Thomas*, 2004 WI App 115, ¶14, 274 Wis. 2d 513, 683 N.W.2d 497 (citation omitted).

¶24 The vagueness doctrine is rooted in procedural due process. *Barrett*, 391 Wis. 2d 283, ¶25. Its aim is two-fold: (1) to ensure that our laws provide sufficient notice of what conduct is prohibited so that those wanting to obey the law may conform their behavior accordingly and (2) to provide those charged with

enforcement of the law objective standards for doing so. *Pittman*, 174 Wis. 2d at 276; *State v. McKellips*, 2016 WI 51, ¶41, 369 Wis. 2d 437, 881 N.W.2d 258. "A statute is unconstitutionally vague if it fails to give fair notice to a person of ordinary intelligence regarding what it prohibits and if it fails to provide an objective standard for enforcement." *McKellips*, 369 Wis. 2d 437, ¶41. A statute need not define the boundary between lawful and unlawful conduct "with absolute clarity and precision." *Pittman*, 174 Wis. 2d at 276-77 (citation omitted). "A statute is not void for vagueness merely because its applicability may be uncertain in some situations." *Barrett*, 391 Wis. 2d 283, ¶25. A "fair degree of definiteness is all that is required." *McKellips*, 369 Wis. 2d 437, ¶41 (citation omitted).

¶25 Constitutional challenges to a statute can be sorted broadly into two categories. A litigant may argue that the statute is invalid on its face, "meaning that it operates unconstitutionally under all circumstances." *State v. Herrmann*, 2015 WI App 97, ¶6, 366 Wis. 2d 312, 873 N.W.2d 257. Hibbard states in his brief that he is not asserting that either of the statutes under which he was convicted is "flatly unconstitutional." From this, we understand him not to be raising a facial challenge.

¶26 The other type of challenge is an "as-applied" challenge, in which the litigant contends that a statute "operates unconstitutionally on the facts of a particular case or with respect to a particular party." *Herrmann*, 366 Wis. 2d 312, ¶6. Hibbard's challenge falls into this category. He contends that WIS. STAT. §§ 940.02(2)(a) and 939.05(2)(b) are "impermissibly imprecise about what conduct qualifies as aiding and abetting a fatal drug delivery, and about how those enforcing the statutes should decide whether a particular actor" violated them. He argues that holding "someone solely on the *receiving* end of a drug deal" "just as guilty of reckless homicide" as the person who sells the drugs is "an unconstitutionally unforeseeable—and profoundly unfair—result." Hibbard further contends that the

11

No. 2020AP1157-CR

statutes do not provide meaningful guidance to law enforcement and prosecutors for determining what "kinds of buyer-side involvement will incur Len Bias liability," offering as an example of a possible violator a "bus driver who lets an addict on, knowing he's headed to a drug deal."

¶27 These arguments do not overcome the presumption of constitutionality or establish that the "interplay" between the two statutes renders them unconstitutionally vague. First, as a preliminary matter, under Wisconsin case law Hibbard cannot argue that the statutes are vague as applied to a category of persons, or ground his argument in hypothetical sets of facts involving other persons. "[V]agueness challenges which do not involve [F]irst [A]mendment freedoms must be examined in light of the facts of the case at hand." *State ex rel. Smith v. City of Oak Creek*, 139 Wis. 2d 788, 802, 407 N.W.2d 901 (1987); *State v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496 (Ct. App. 1997) ("a defendant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, absent an impact on a First Amendment right."). Hibbard does not argue that he had a First Amendment right to drive his daughter to meet Poe. Therefore, his vagueness challenge is limited to the facts of his own case.

¶28 Second, the statutes at issue sufficiently define what is prohibited and provide objective standards for enforcement. WISCONSIN STAT. § 940.02(2)(a) makes it a crime to cause the death of another "[b]y manufacture, distribution or delivery" of a controlled substance "if another human being uses the controlled substance … and dies as a result of that use." Our statutes define the term "delivery" "unless the context otherwise requires, [as] the actual, constructive or attempted transfer from one person to another of a controlled substance or controlled substance analog, whether or not there is any agency relationship." WIS. STAT. § 961.01(6).

Together, these statutes clearly identify three actions—manufacture, distribution, and delivery—that are prohibited with respect to controlled substances, and further specify that the term "delivery" includes an attempt, actual or constructive, to transfer the controlled substance from one person to another. Hibbard does not identify any language in § 940.02(2)(a) that the average person would be unable to decipher, and we conclude that a person wanting to follow the law is given sufficient guidance in the text of the statute as to the conduct it proscribes.

¶29 The crux of Hibbard's argument, both as to the issues of sufficient notice to the public and objective enforcement standards, focuses on the uncertainty that he contends is created when the concept of aider and abettor liability is layered on top of the prohibition on "manufacture, distribution or delivery" of a fatal dose of a controlled substance. Hibbard contends that the statutes did not provide sufficient notice that his conduct, which he again describes as being "solely on the *receiving* end of a drug deal," could subject him to reckless homicide liability and that the lack of clarity regarding what conduct is sufficient to aid and abet the delivery of a fatal drug dose leaves it to police and prosecutors to "draw these difficult lines."[3]

¶30 We disagree. As noted above, Hibbard's description of his role is not accurate. The evidence showed that Hibbard's conduct went beyond merely accepting and using a portion of the drugs his daughter purchased. He encouraged his daughter to obtain the drugs and drove her to the location where she met the seller so that she could do so. That he transported only the buyer to the meeting

---

[3] Our supreme court rejected an as-applied vagueness challenge to WIS. STAT. § 939.05(2)(b) and a firearms statute in *State v. Asfoor*, 75 Wis. 2d 411, 435, 249 N.W.2d 529 (1977), but that case contains no analysis of vagueness that is helpful to us in this case.

place does not mean that his conduct did not also facilitate the seller's delivery of drugs.

¶31    More to the point, the phrase "[i]ntentionally aids and abets" in WIS. STAT. § 939.05(2)(b) is not unduly vague as applied in this case.  To be sure, the concept of aiding and abetting is potentially applicable to a broad swath of conduct.  Our supreme court has recognized that "aiding and abetting" can fairly describe any "verbal or overt action." *Hecht*, 116 Wis. 2d at 620 (quoting *Hawpetoss v. State*, 52 Wis. 2d 71, 78, 187 N.W.2d 823 (1971)).  But that breadth did not leave Hibbard or law enforcement without guidance in determining when the statute applies in the context of a drug transaction that ultimately proves fatal, for two reasons.

¶32    First, WIS. STAT. § 939.05(2)(b) requires that the conduct at issue have a specific purpose—assisting another in committing a criminal offense.  Applying that general purpose to this case, the statutes informed Hibbard that any conduct he undertook to assist Poe in the manufacture, distribution, or delivery of heroin exposed him to liability for first-degree reckless homicide if someone died as a result of using it.  Second, § 939.05(2)(b) applies only to assistance that is "intentionally" rendered—that is, only if the person who engages in the assisting conduct knows that another person is committing a crime or intends to do so, and intends their conduct to assist in the commission of the crime.  *See* WIS JI—CRIMINAL 400.  As applied here, the statutes informed Hibbard that, because he knew Poe intended to sell heroin to Taralyn, anything he did to facilitate that sale with the intent that the sale occur could subject him to liability for a homicide resulting from a person's use of the drugs that were sold.

¶33    Together, these two aspects of WIS. STAT. § 939.05(2)(b) draw a distinction between a person who knows that criminal activity is afoot and acts to

14

facilitate it, and someone who observes or is aware of criminal activity but does nothing to assist it. *See* WIS JI—CRIMINAL 400. In the specific context of WIS. STAT. § 940.02(2)(a), the purpose and intent limitations provide objective guideposts to those charged with enforcement of the law in determining whether conduct surrounding the sale of what turns out to be a fatal dose of drugs renders the actor liable for aiding and abetting the sale.

## CONCLUSION

¶34 The State introduced sufficient evidence that Hibbard aided and abetted Poe's delivery of a fatal amount of heroin to Hibbard's daughter by driving her to meet Poe so that the delivery could take place. Hibbard's contention that he was unaware that his conduct could render him criminally liable for his daughter's death does not render the statutes under which he was convicted unconstitutionally vague. WISCONSIN STAT. §§ 940.02(2)(a) and 939.05(2)(b) sufficiently describe the conduct they prohibit and provide objective standards for enforcing their prohibitions.

*By the Court.*—Judgment and order affirmed.