COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP68-CR**

Cir. Ct. No. 2020CF372

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

　　PLAINTIFF-RESPONDENT,

　V.

DEMILLION C. MOORE,

　　DEFENDANT-APPELLANT.

　　　　　　APPEAL from a judgment of the circuit court for Waukesha County: JENNIFER R. DOROW, Judge. *Affirmed.*

　　　　　　Before Gundrum, P.J., Neubauer, and Lazar, JJ.

　　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Demillion C. Moore appeals a judgment of conviction, entered following a jury trial, for first-degree reckless homicide, under the Len Bias law,[1] as party to a crime. On appeal, Moore argues the evidence was insufficient to establish he knowingly aided or abetted or conspired in the delivery of heroin and fentanyl to J.B. causing his death. He also argues his conviction must be vacated because he was never arraigned. We reject his arguments and affirm.

## BACKGROUND

¶2    At trial, the State established that, in 2017, Moore was in pretrial custody in the Milwaukee County Jail. While in custody, Moore continued to manage his heroin distribution operation by having his friend, Friday Williams, obtain heroin from Moore's supplier and sell it to Moore's customers on his behalf. In jail calls, Moore gave detailed instructions to Williams on how to package the heroin so it would not crumble, kept close tabs on the weekly income from each phone line, directed Williams to start switching customers to a new phone line, and became upset when sales slowed. Williams testified he was selling heroin for Moore to raise money for Moore's bail.

¶3    On September 5, 2017, Selena Leitzke picked J.B. up, called and ordered heroin from Williams, and drove to pick it up. Leitzke then took J.B. home, gave J.B. his heroin, and left. J.B. was found dead in his bedroom the

---

[1]    The legislature enacted WIS. STAT. § 940.02(2)(a) (2023-24) after a college athlete, Len Bias, died from a cocaine overdose. *See* ***State v. Patterson***, 2010 WI 130, ¶37, 329 Wis. 2d 599, 790 N.W.2d 909. Pursuant to the statute, anyone who provides a fatal dose of a controlled substance may be prosecuted for first-degree reckless homicide. *See* ***id.***

All references to the Wisconsin Statutes are to the 2023-24 version.

following afternoon. The family J.B. lived with testified no one else entered or left the house between Leitzke's departure and the discovery of J.B.'s death. The autopsy showed J.B. died of opioid intoxication due to fentanyl and heroin.

¶4     The State charged Moore, pursuant to the Len Bias law, with one count of first-degree reckless homicide as party to a crime. The jury convicted Moore as charged. Additional facts will be included below.

## DISCUSSION

¶5     On appeal, Moore argues the evidence was insufficient to support his conviction. He also argues his conviction must be vacated because he was never arraigned. We address each argument in turn.

## I.     Sufficiency of the evidence

¶6     Moore first argues the evidence was insufficient to support his conviction. We independently review "whether the evidence was sufficient to sustain the jury verdict, 'but in so doing, we view the evidence most favorably to sustaining the conviction.'" *State v. Hibbard*, 2022 WI App 53, ¶9, 404 Wis. 2d 668, 982 N.W.2d 105 (citation omitted). "Evidence is insufficient to support a conviction only if, viewed most favorably to the State, it 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *Id.* (citation omitted).

¶7     First-degree reckless homicide, under the Len Bias law, is committed by delivery of a controlled substance in violation of WIS. STAT. § 961.41, which another human being uses and dies as a result of that use. *See* WIS. STAT. § 940.02(2)(a). In this case, the State was required to prove:

(1) Moore "delivered a substance"; (2) "the substances were heroin and [f]entanyl"; (3) Moore "knew or believed that the substances were heroin and [f]entanyl, controlled substances"; and (4) J.B. "used the substances alleged to have been delivered by [Moore] and died as a result of that use."

¶8 However, because the State charged Moore as party to a crime, the State was not required to prove that Moore, who was in jail at the time, directly committed the crime. Rather, the State could prove that Moore intentionally aided and abetted the person who directly committed the crime, or was a member of a conspiracy to commit that crime. *See* WIS. STAT. § 939.05(2).

¶9 At trial, the jury was instructed:

> To intentionally aid and abet first degree reckless homicide, [Moore] must know that another person is committing or intends to commit the crime of delivery of a Schedule I or II controlled substance and have the purpose to assist the commission of the crime and which substance was used by the victim and was a substantial factor in his death.

As for conspiracy, the jury was instructed:

> To be a member of a conspiracy to commit first degree reckless homicide, [Moore] must know that another person is committing or intends to commit the crime of delivery of a Schedule I or II controlled substance and intentionally agree or joins with that person for the purpose of committing that crime and which substance was used by the victim, and was a substantial factor in his death.

¶10 We conclude the evidence was sufficient to support Moore's conviction. The jail calls showed Moore gave direct instructions to Williams to work with Moore's supplier and customers and maintain Moore's heroin distribution business for him so that he could raise the cash bail he needed. Williams testified that he was running Moore's heroin sales and giving him the

money while Moore was in jail. Leitzke identified Williams as the person who sold her the heroin on September 5, 2017 that she gave to J.B. before she left him in his bedroom. The people J.B. lived with testified that J.B. came home with Leitzke and went to his room and never left it afterward. According to the medical examiner, the cause of J.B.'s death was opioid intoxication from heroin and fentanyl.

¶11 From this evidence, a reasonable jury could infer either that Moore aided and abetted in the delivery of the heroin that killed J.B. or that he was a member of a conspiracy to deliver the heroin that killed J.B. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990) ("[A]n appellate court must accept and follow the inference drawn by the trier of fact unless the evidence on which that inference is based is incredible as a matter of law."). From the jail calls between Williams and Moore, it was also reasonable for the jury to infer that Moore intended that the crime of delivering heroin be committed. *See id.*

¶12 On appeal, Moore challenges the sufficiency of the evidence on various grounds. He first argues the evidence was insufficient to establish he intentionally aided and abetted or conspired with Williams in his sale of heroin to Leitzke. He notes that, in *Hibbard*, 404 Wis. 2d 668, ¶14, we determined Hibbard intentionally aided and abetted the delivery of heroin because the evidence established Hibbard knowingly drove the victim to purchase heroin from her supplier (she later died from the purchased heroin). Moore argues that, unlike in *Hibbard*, the evidence in his case was insufficient because "the death of [J.B.] was completely attenuated from Moore, who sat in jail at the time [Leitzke] negotiated the purchase of heroin from [Williams] and delivered it to [J.B.]"; "there was no testimony or evidence presented to establish any awareness Moore even knew of the sale of heroin by [Williams] to [Leitzke], so he could not have intended to aid

5

and abet that sale" and "Moore could not have reasonably foreseen [Williams] would sell heroin to [Leitzke], then deliver it to [J.B.], and causing his death."

¶13     We reject Moore's assertion that the evidence at trial was insufficient to establish he intentionally aided and abetted or conspired in the drug transaction. As stated above, based on the jail calls between Moore and Williams, where Moore gave Williams instructions, advice, and put pressure on Williams to maintain and run Moore's heroin operation, a jury could reasonably infer Moore was acting with the knowledge or belief that Williams was committing or intended to commit the crime of delivering heroin to Leitzke, and Moore was assisting or conspiring with Williams in committing that crime. *See* **Poellinger**, 153 Wis. 2d at 507.

¶14     Moore next argues that, in order to be convicted of a Len Bias first-degree reckless homicide, the State should be required to prove he acted with criminal recklessness. He notes that because the Len Bias offense falls into the statutory section titled "First-degree reckless homicide,"[2] this "indicates the

---

[2] WISCONSIN STAT. § 940.02 is titled, "First-degree reckless homicide." It provides:

> (1)  Whoever recklessly causes the death of another human being under circumstances which show utter disregard for human life is guilty of a Class B felony.

> (1m)  Whoever recklessly causes the death of an unborn child under circumstances that show utter disregard for the life of that unborn child, the woman who is pregnant with that unborn child or another is guilty of a Class B felony.

> (2)  Whoever causes the death of another human being under any of the following circumstances is guilty of a Class B felony:

(continued)

legislature's intent that the State must prove Moore … acted recklessly in delivering heroin to [J.B.] and causing his death." He also argues that because the penalties associated with delivery of a controlled substance causing death (first-degree reckless homicide) are more severe than the penalties associated with delivery of a controlled substance, this "suggest[s] the Wisconsin legislature intended there to be an element of foreseeability or recklessness in proving the defendant's guilt."

¶15 We reject Moore's arguments. The legislature has statutorily defined first-degree reckless homicide by delivery of a controlled substance causing death. WISCONSIN STAT. § 940.02(2)(a) plainly and unambiguously provides:

> Whoever causes the death of another human being under any of the following circumstances is guilty of a Class B felony:
>
> (a) By manufacture, distribution or delivery, in violation of [WIS. STAT. §] 961.41, of a controlled substance included in schedule I or II under ch. 961 … if another human being uses the controlled substance or controlled substance analog and dies as a result of that use[.]

---

> (a) By manufacture, distribution or delivery, in violation of [WIS. STAT. §] 961.41, of a controlled substance included in schedule I or II under ch. 961 … if another human being uses the controlled substance or controlled substance analog and dies as a result of that use[.]
>
> ….
>
> (b) By administering or assisting in administering a controlled substance included in schedule I or II under ch. 961 … without lawful authority to do so, to another human being and that human being dies as a result of the use of the substance[.]

*Id.*

7

We apply the statute as written.  *See* ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (citation omitted)).

¶16    Moore then argues the State should have been required to prove at trial that Moore could have reasonably foreseen that Williams would sell heroin to Leitzke, then deliver it to J.B., and cause his death.  Moore points to federal case law interpreting 21 U.S.C. § 841(b)(1)(C), which is a comparable but not identical federal statute concerning drug delivery that results in death.  One difference between WIS. STAT. § 940.02(2)(a) and 21 U.S.C. § 841(b)(1)(C) is that the federal statute includes a 20-year mandatory minimum sentence if the drug delivery results in death.

¶17    In support, Moore relies on ***United States v. Walker***, 721 F.3d 828 (7th Cir. 2013), *vacated on other grounds by* ***Lawler v. United States***, 572 U.S. 1111 (2014).  There, the Seventh Circuit determined whether it was required to apply the same 20-year mandatory minimum penalty to all defendants regardless of their role in the conspiracy or connection to the drugs that killed the user.  ***United States v. Walker***, 721 F.3d at 831.  The court observed the federal sentencing guidelines "make clear that the scope of a defendant's relevant conduct for determining sentencing liability may be narrower than the scope of criminal liability."  ***Id.*** at 835.  The court then interpreted the guidelines "to mean a defendant can only be subject to the [20-year mandatory minimum] enhancement if the distribution of heroin that ultimately led to a victim's death was 'reasonably foreseeable.'"  ***Id.*** (citation omitted).  However, the court reasoned that "in cases where a defendant directly distributes drugs or uses intermediaries to distribute drugs that result in death," "a district court generally need not find death

8

reasonably foreseeable for the mandatory minimum sentence to apply[.]" *Id.* at 836.

¶18 Moore relies on *Walker* to argue that to obtain a conviction under WIS. STAT. § 940.02(2)(a), the State should be required to prove the victim's death was a foreseeable and natural result of delivery. We reject his argument. First, as stated above, we apply § 940.02(2)(a) as written. Second, *Walker* involves interpreting the federal sentencing guidelines. The sentence a circuit court imposes after conviction does not implicate Moore's sufficiency-of-the-evidence argument. Further, unlike federal law, Wisconsin does not have a mandatory minimum sentence for convictions under its Len Bias law.

¶19 Moore also devotes a significant portion of his brief explaining the "but for" test set forth in *Burrage v. United States*, 571 U.S. 204, 211 (2014). That case involved a drug user who died after using multiple substances from various sources, including heroin he obtained from Burrage. *Id.* at 206-07. The court held "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage*, 571 U.S. at 218-19.

¶20 Moore does not explain why *Burrage* would be dispositive in this case or how it implicates his sufficiency-of-the-evidence argument. It appears Moore's argument relates to the causation element found in WIS. STAT. § 940.02(2) ("Whoever causes the death of another human being[.]"). However, as a threshold matter, *Burrage* does not control our decision in this case. "Wisconsin courts are not bound by decisions of the United States Supreme Court

when federal law does not govern the dispute." ***State v. Gary M.B.***, 2004 WI 33, ¶17, 270 Wis. 2d 62, 676 N.W.2d 475.  This case presents an issue of state, not federal, law.  Further, we observe that the statutory language in 21 U.S.C. § 841 is not identical to WIS. STAT. § 940.02(2).  Finally, in terms of the definition of "causes," we are bound by our own precedent and jurisprudence:

> In Wisconsin criminal law, the term "causes" has a consistent, well-established meaning …. An actor causes death if his or her conduct is a "substantial factor" in bringing about that result …. What is more, "[a] substantial factor *need not be the sole cause of death*" for one to be held legally culpable."

***State v. Below***, 2011 WI App 64, ¶27, 333 Wis. 2d 690, 799 N.W.2d 95 (citations omitted; emphasis in original).  Moore's brief contains no analysis or discussion of how Wisconsin's criminal jurisprudence has defined "causes."

¶21  In any event, the evidence in this case would have satisfied the but-for test under ***Burrage***.  After all, unlike the drug user in ***Burrage***, who died after using multiple substances from various sources, the evidence in this case showed J.B. died after using heroin and fentanyl that Moore delivered as a party to a crime.  J.B.'s use of the drug Moore delivered as a party to a crime was "an independently sufficient cause of the victim's death," and it therefore was "a but-for cause of the death."  *See **Burrage***, 571 U.S. at 218-19.

¶22  Finally, at the very end of his sufficiency of the evidence argument, Moore offers a single sentence: "the State failed to elicit any testimony from the medical examiner the heroin and fentanyl which killed [J.B.] was a Schedule I or II controlled substance[.]"  Moore's argument on this point is unclear.  The State did not need to elicit specific testimony from the medical examiner that the drugs were classified as Schedule I controlled substances.  As relevant, the State needed

10

to only prove the defendant knew the substance delivered was controlled or illegal. *State v. Sartin*, 200 Wis. 2d 47, 55, 546 N.W.2d 449 (1996).

¶23 Here, the jury was properly instructed that the State was required to prove: "the Defendant delivered a substance"; "the substances were heroin and [f]entanyl"; and "the Defendant knew or believed that the substances were heroin and [f]entanyl, controlled substances." From the evidence presented, a reasonable jury could have concluded the State proved these elements. Williams testified he worked with Moore's supplier and continued Moore's heroin business while Moore was incarcerated. Williams also explained that he and Moore talked in code about Moore's heroin business so police would not know what they were doing. As to Moore's specific argument, we also observe that the medical examiner did testify that fentanyl was a controlled substance. We conclude the evidence sufficiently supports the conviction.

## II. Arraignment

¶24 Moore next argues "[t]he record establishes the court never conducted, apparently through oversight, an arraignment before or during Moore's trial." He asserts the arraignment was scheduled for July 17, 2020, but it was adjourned and "no arraignment was apparently ever conducted after this point in the proceedings." Moore argues that because he was never arraigned, the circuit court lost competency to adjudicate his guilt and we must vacate the judgment of conviction.

¶25 The State responds that Moore's argument is foreclosed by the record. It points out that Moore's arraignment occurred about one month after July 17, 2020—on August 13, 2020, following the circuit court's decision on Moore's challenge to the bind over.

11

¶26 We agree with the State. The record reflects that Moore was arraigned on August 13, 2020. Pursuant to WIS. STAT. § 971.05(3), at an arraignment,

> The district attorney shall deliver to the defendant a copy of the information in felony cases and in all cases shall read the information or complaint to the defendant unless the defendant waives such reading. Thereupon the court shall ask for the defendant's plea.

Sec. 971.05(3). The defendant then enters a plea. Sec. 971.05(4). In this case, on August 13, after the circuit court ruled on Moore's challenge to the bind over, the following exchange occurred:

> [The Court:] [Counsel], how would you like to proceed now?
>
> [Moore's counsel:] Well, Your Honor, we -- at this stage we have received a copy of the information. We'll waive its formal reading and enter a plea of not guilty.

Because Moore acknowledged receipt of the information, waived its reading, and entered a not guilty plea, he was arraigned.

¶27 In his reply brief, Moore seemingly concedes he had an arraignment, but he argues that his arraignment was insufficient. He complains "there was no record indication Moore had … been able to read the Information, much less review it with his lawyer, prior to his lawyer's perfunctory indication of a 'waiver.'" He also complains his arraignment was insufficient because the State, Moore's attorney, and Moore all appeared via Zoom, and Moore never waived his personal appearance on the record.

¶28 These arguments are being raised for the first time in a reply brief, and we conclude they are forfeited. *See **A.O. Smith Corp. v. Allstate Ins. Cos.**,* 222 Wis. 2d 475, 492-93, 588 N.W.2d 285 (Ct. App. 1998) (appellate court will

12

generally not address arguments raised for the first time in reply brief). In any event, we observe there is no objection to the Zoom appearance in the record, and Moore does not even mention or discuss the various court orders regarding COVID-19 and court operations that were in place during Moore's arraignment. Additionally, if Moore wanted to claim his attorney erred because neither he nor Moore read the information before agreeing to waive its formal reading, that would need to be the subject of an ineffective-assistance-of-counsel claim, which is not properly before this court. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (a defendant alleging ineffective assistance of counsel must seek to preserve counsel's testimony in a postconviction hearing). We do not consider these arguments further.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.