# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 3, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1034-CR**

Cir. Ct. No. 2020CF3016

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KENDELL D. TOWNS,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: J.D. WATTS, Judge. *Affirmed.*

Before White, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kendell D. Towns appeals from a judgment of conviction for first-degree intentional homicide while using a dangerous weapon,

as a party to a crime, and felon in possession of a firearm. Towns argues that the evidence presented at trial was insufficient for the jury to convict him because the State presented no direct evidence of his involvement in the homicide. We conclude that sufficient evidence supports the jury's verdict. Accordingly, we affirm.

## BACKGROUND

¶2    The State charged Towns with first-degree intentional homicide while using a dangerous weapon, as a party to a crime, and being a felon in possession of a firearm, in connection with the shooting death of Rena Gurley. According to the complaint, on August 20, 2020, Milwaukee Police Officer Hector Sosa responded to a ShotSpotter[1] alert on 27th Street where several citizens flagged him down, and he found Gurley's body. The medical examiner determined that Gurley died from multiple gunshot wounds, and police recovered five .40 caliber cartridge casings from the scene. The complaint also detailed how officers, relying on surveillance video footage from nearby businesses, pole cameras, and a Milwaukee County bus, connected Towns to Gurley's homicide. Gurley was seen in the videos walking on the sidewalk near the area where her body would ultimately be found; she had a flashlight, and appeared to be collecting cigarette butts as she walked. The videos then showed two individuals, one of whom appeared to have a firearm in his shorts pocket, exit a car and walk in the same direction that Gurley had been walking shortly beforehand. Gurley and the suspects walked out of the view of the cameras, and the ShotSpotter alert

---

[1] A law enforcement witness testified that "ShotSpotter is a gunshot location system that uses a wide array of GPS-enabled audio sensors to detect and locate loud, impulsive noises such as gunfire."

came shortly thereafter. The videos then show both suspects running from an alley and reentering the car they had previously exited. A nearby automated license plate reader determined that the plate on the car, a Hyundai Sonata, was registered to Towns's girlfriend, Venice Whittington, and Whittington told officers that Towns drove the Hyundai.

¶3 Upon searching the Hyundai, officers recovered Towns's fingerprint on the rearview mirror, paperwork in Towns's name, and a handgun holster. Officers also found an empty .40 caliber magazine during a search of Towns's residence following his arrest. An officer determined that the five .40 caliber casings found at the homicide scene were fired from one firearm. That same firearm had fired three .40 caliber casings that had been found in an abandoned Chrysler Pacifica belonging to Whittington after a shooting on May 13, 2020. Whittington reported that Towns was driving the Chrysler on May 13 and was present at that unrelated shooting, but was not the shooter.

¶4 The case proceeded to a jury trial, where neighbors near the location of the homicide testified to hearing a pleading, screaming woman and gunshots around 5:00 a.m. on August 20, 2020. The neighbors saw Gurley's body laying at the landing of a nearby residence. Officer Roberto Hernandez testified that on August 20, 2020, at approximately 4:54 a.m., the ShotSpotter system detected five gunshots near the 3200 block of North 27th Street. When officers arrived at the scene, they discovered Gurley's body with five fired casings nearby. An autopsy confirmed that Gurley died from multiple gunshot wounds.

¶5 Detective Shaun Lesniewski testified that officers obtained surveillance video from several cameras at Auer Community Foods at 27th Street and West Auer Avenue, a police-installed pole camera from the neighborhood,

3

and a bus security camera. In the store surveillance video from the Auer side of the store, Detective Lesniewski observed Gurley walking on the sidewalk with a flashlight, appearing to pick up cigarettes at 4:50 a.m. He believed that this person was Gurley based on the officer's discovery of a flashlight and a bag containing cigarette butts near where she was killed, as well as his comparison of the body shape and clothing of the woman in the video to Gurley's body shape and clothing.

¶6 Detective Lesniewski also observed the Hyundai cross 27th Street twice on Auer, within approximately two minutes, at 4:50 a.m. and 4:52 a.m. The State played a portion of a video in which the Hyundai crossed 27th Street in front of a city bus as Gurley approached the intersection on foot. As Gurley crossed, she turned and looked back, and as she walked out of the camera view, two males crossed 27th Street behind Gurley and proceeded in the same direction that Gurley was walking, approximately a minute and a half before Gurley was killed.

¶7 Detective Lesniewski testified that one male was wearing a white shirt, and the other male was larger, with "long dreads," and he was wearing a black t-shirt, shorts, and flip flop sandals with ankle socks. Based on his review of the video, Detective Lesniewski believed that the male with the long dreads and sandals appeared to have a firearm with an extended magazine in his right pocket.

¶8 Bus security video also showed the Hyundai cross 27th Street at the corner of Auer next to the store. After the bus crossed the intersection, its rear camera showed the Hyundai braking along Auer across the street from the store. A pole camera captured footage from the same time that showed the Hyundai stopping, and a woman believed to be Gurley crossing 27th Street. Two minutes later, the footage showed two other people walking near the intersection. A few

minutes later, at 4:54 a.m., two people were seen running across 27th Street to the alley behind the store.

¶9 Upon reviewing the store's alley surveillance video, Detective Lesniewski saw two males run through the alley, including a male wearing a white shirt followed by "a male with long dreads, wearing a black tee shirt, blue jean shorts, black slide flip flops, and with ankle socks[.]" Detective Lesniewski believed that the second male running through the alley was the same person who earlier appeared to have a firearm and was following Gurley. Shortly thereafter, another store security camera showed the suspect vehicle make a U-turn on Auer. Based on his review of the pole camera video, Detective Lesniewski testified that the suspect car then travelled southbound on 27th Street, taking off at a high rate of speed after passing the place where Gurley was found.

¶10 Detective Lesniewski testified that an automated license plate reader was mounted next to the pole camera and was facing southbound on 27th Street. The license plate reader photographed a Hyundai Sonata registered to Whittington on August 20, 2020, at 4:58 a.m.

¶11 Detective Vincent Lopez testified that he reviewed surveillance video from another nearby shop which showed the intersection of 27th Street and West Burleigh Street. Detective Lopez observed the Hyundai three times on the video. First, he saw it travelling westbound and tapping its brakes at approximately 4:49 a.m. Second, Detective Lopez saw the Hyundai a few minutes later again travelling westbound on Burleigh. The Hyundai slowed down and then quickly pulled to the right near the curb towards an unidentified woman who was walking down 27th Street, before pulling away. Third, Detective Lopez saw the Hyundai travelling south on 27th Street at a high rate of speed.

¶12 Towns's mother, Genia Harris, testified that Towns, Whittington, and their children live with her. Detective Jake Puschnig testified that he showed Harris surveillance video of the two men walking across the street and that Harris stated one of the individuals "kind of looked like her son" based on his "height and body." Detective Puschnig testified that Harris was referring to "[t]he bigger one with the object in his pocket." Knowing that Harris had more than one son, Detective Puschnig asked "what son ... and she stated Kendell Towns." At trial, Harris acknowledged that a detective showed her a video of two men crossing the street, but she denied telling the detective that one of the men looked like her son based on body type.

¶13 Detective Jeffrey Sullivan testified that he participated in the execution of a search warrant at Towns's and Whittington's residence, a lower unit in a duplex, a few days after Gurley's death. Officers found Towns in the duplex's upper unit. Detective Sullivan found an empty .40 caliber magazine, but no firearm and no .40 caliber ammunition. Detective Tammy Tramel-McClain, who was present when the warrant was executed, testified that officers stopped Whittington after she left the residence in the Hyundai. Detective Tramel-McClain observed Towns at the scene and described him as wearing a black t-shirt, dark gray sweatpants, and black flip flop sandals, which appeared to match what the suspect was wearing in the video.

¶14 Sergeant Nathan Butz testified that he assisted in processing the Hyundai. Inside the car, officers found Towns's identification which listed his residence and a black nylon handgun holster, but they did not find a firearm or any cartridges. Sergeant Butz said that an investigator recovered five prints from the car, and a latent print examiner testified that a print found on the mirror matched Towns's.

¶15    Whittington testified that she lived with Towns, their children, and Harris; that the Hyundai was her car; and that Towns sometimes drove it. According to Whittington, Towns regularly wore white and black t-shirts and black flip flop sandals with ankle socks. Detective Lesniewski testified that he spoke to Whittington outside her residence during the search warrant's execution. Whittington first told him that she was with Towns at an after-hours party until 6:00 a.m., but when he told her that this would place her in the car when the homicide occurred, Whittington admitted to lying and said that "she wasn't going to go to jail for Mr. Towns." Whittington then admitted that Towns opened the bedroom door at approximately 3:00 a.m., stared at her, said nothing, closed the door, and went to a different part of the house. When Whittington woke up at 5:45 a.m. to get ready for work, she did not see Towns, he was not at the residence, her car was not there, and Towns had her car. Towns walked into the house shortly after 6:00 a.m. wearing a black t-shirt, blue jean shorts, flip flop sandals, and ankle socks.

¶16    The State also presented evidence of an unrelated incident that occurred on May 13, 2020. Alfredo Martin, a security officer, testified that, on that day, he saw an SUV stalled in the intersection of North Sherman Boulevard and West Center Street. Martin saw one person inside the SUV, who exited the driver's side. Martin later identified Towns in a photo array as the person who exited the SUV and "then jumped in to the passenger's side of [a different vehicle] and took off." Martin contacted the police because he believed that the SUV, a Chrysler Pacifica, had been stolen. Police later recovered three casings from the driver's floorboard area of the Chrysler and determined that the vehicle belonged to Whittington.

¶17    Officer David Letteer testified that on May 13, 2020, he responded to Sherman Boulevard and Center Street and observed the Chrysler in the intersection with its flashers on.  Officers observed three spent .40 caliber casings in the Chrysler that Officer Letteer later inventoried.  A firearm and tool mark examiner at the Wisconsin State Crime Laboratory testified that he examined the three fired .40 caliber cartridge casings recovered from the Chrysler and the five .40 caliber cartridge casings recovered near Gurley's body, and determined that all eight casings had been fired from the same firearm.

¶18    Whittington testified that she was not present when her Chrysler broke down on May 13, 2020, that she later went to retrieve that car, and that she could not remember who told her to do so.  When asked if she told police about people shooting out of the car, Whittington replied, "I remember slightly.  I was kind of under the influence."

¶19    Detective Puschnig testified that he examined the search history connected to one of Towns's Gmail accounts and discovered that within two hours of Gurley's homicide, the account searched "shooting in Milwaukee" and visited two links related to other shootings.  Later that day, someone using the account conducted another "shooting in Milwaukee" search, and this time, visited a link with a news article concerning Gurley's homicide.  From the same Gmail account, someone also conducted two "shooting in Milwaukee" searches on August 22, 2020, with visits to links for articles related to Gurley's homicide and an unrelated shooting.

¶20    The jury found Towns guilty of first-degree intentional homicide, as a party to a crime, and separately determined that he committed this crime while using a dangerous weapon.  The jury also found Towns guilty of possession of a

firearm by a felon.[2] The circuit court sentenced Towns to life imprisonment with eligibility for extended supervision after 30 years for the homicide conviction, and a consecutive 10-year term of imprisonment for the felon in possession conviction.

¶21 Towns appeals.

## DISCUSSION

¶22 Towns argues that the evidence at trial was insufficient to support the jury's verdict convicting him of first-degree intentional homicide because the State relied entirely on circumstantial evidence and did not present any direct evidence implicating Towns in Gurley's homicide. Whether the evidence was sufficient to sustain a guilty verdict presents a legal question that this court reviews independently. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶23 "[A] defendant challenging the sufficiency of the evidence bears a heavy burden to show the evidence could not reasonably have supported a finding of guilt." *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681. "Evidence is insufficient to support a conviction only if, viewed most favorably to the State, it 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *State v. Hibbard*, 2022 WI App 53, ¶9, 404 Wis. 2d 668, 982 N.W.2d 105 (quoting *State v. Poellinger*, 153 Wis. 2d 493, 501, 451

---

[2] Towns stipulated that he had been convicted of a felony before the date of the charged offenses.

N.W.2d 752 (1990)). We will affirm a verdict "based on a reasonable inference drawn from the evidence[.]" *Smith*, 342 Wis. 2d 710, ¶33.

¶24 Towns argues that the evidence was insufficient to connect him to either the homicide or the related felon in possession of a firearm charge because all of the evidence against him was circumstantial. However, it is well settled that verdicts may be based entirely on circumstantial evidence because "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Poellinger*, 153 Wis. 2d at 501. The evidence against Towns included: video camera footage of a person who looked and dressed like Towns with a firearm in his pocket; an initial but then recanted identification by Towns's mother; the testimony of Towns's girlfriend who admitted that he drove her Hyundai during the relevant time; the forensic evidence related to the cartridges; and the internet searches. The jury drew reasonable inferences from the totality of the evidence to conclude that Towns intentionally killed Gurley and that he unlawfully possessed a firearm as a felon.

¶25 When viewed in the light most favorable to the State, nothing about the evidence was "so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found [Towns] guilty beyond a reasonable doubt." *State v. Norman*, 2003 WI 72, ¶68, 262 Wis. 2d 506, 664 N.W.2d 97. The State presented sufficient evidence from which the jury could reasonably conclude beyond a reasonable doubt that Towns was guilty of first-degree intentional homicide while armed with a dangerous weapon, as a party to a crime, and being a felon in possession of a firearm. Therefore, Towns did not prove that the evidence, as a matter of law, "could not reasonably have supported" the jury's guilty verdict. *Beamon*, 347 Wis. 2d 559, ¶21.

10

**CONCLUSION**

¶26    For the foregoing reasons, we conclude that sufficient evidence supports the jury's verdict.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11